UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM L. WRIGHT, III, | : | |
| Plaintiff, | : | |
| v. | : | No. 2:14-cv-00245 |
| MICHAEL WENEROWICZ *et al.*, | : | |
| Defendants. | : | |

## OPINION AND ORDER

**Plaintiff's Petition to Appoint Guardian ad Litem, ECF No. 67—Granted**

**Joseph F. Leeson, Jr.**                                                               **February 27, 2018**
**United States District Judge**

      Presently before the Court in this § 1983 suit is a petition by counsel for Plaintiff William L. Wright, III to appoint a guardian ad litem for his client on the grounds that Wright is incompetent and refuses to communicate with him. Wright, a death row inmate, was previously found by state courts to be incompetent to discharge his attorney in the context of collateral proceedings challenging his capital conviction. This finding remains undisturbed. This Court will therefore grant the petition and, in the exercise its discretion under Federal Rule of Civil Procedure 17, appoint a third-party guardian ad litem to represent Wright's interests in conjunction with his appointed counsel.

### I. BACKGROUND

      Wright is currently under a death sentence for a murder he committed in 1998. *See Commonwealth v. Wright*, 78 A.3d 1070, 1072 (Pa. 2013). After his conviction was affirmed on direct appeal, his counsel filed a petition under Pennsylvania's Post Conviction Relief Act

(PCRA). *Id.* at 1072-73. It came to light that Wright's counsel had filed the PCRA petition on his behalf and without his consent, as he had stopped communicating with his counsel. *Id.* at 1073. Wright's counsel raised the possibility that Wright was incompetent to waive his post-conviction rights, including his right to counsel. *Id.* During a videoconference with the PCRA court in October 2010, Wright stated that he had declined all visits and phone calls with counsel, had returned all mail unopened, and that he wanted to discharge his counsel and discontinue his PCRA proceedings. *Id.*

Given the gravity of the matter, the PCRA court appointed a psychiatrist and a psychologist to evaluate Wright's competency to make decisions about his appeal rights and his relationship with his counsel. *Id.* The two experts conducted a thorough review of Wright's mental health records (which numbered approximately 6,000 pages) and performed a two-and-a-half hour clinical evaluation. *Id.* at 1074. At an evidentiary hearing in January 2012, they testified that Wright "displayed cognitive rigidity, paranoid ideations, and personality disorders" to the degree that he "was severely impaired in his decision-making and . . . incompetent to make a knowing, intelligent, and voluntary decision to waive counsel." *Id.* Based on that testimony, the PCRA court recognized that Wright "had demonstrated a pattern of thwarting the attempts of individuals who could aid him, and of viewing opportunities for him to advance his case as conspiracies against him." *Id.* at 1076. As a result, the PCRA court adjudged Wright to be incompetent to waive his right to counsel. *Id.*

In October 2013, the Supreme Court of Pennsylvania affirmed the PCRA court's finding that Wright was incompetent. *Id.* at 1087. The Supreme Court found that the PCRA court properly relied upon Wright's pattern of "distrusting, discharging, and cutting off all communications with a long list of attorneys and other professionals who could have assisted

[his] case." *Id.* at 1086. The Supreme Court concluded that Wright "is prone to engage in delusional and distorted thinking involving imagined conspiracies by such individuals, and that, based on such thinking, his ability to assist counsel in his own defense has been, and continues to be, significantly compromised." *Id.*

In January 2014, Wright, acting pro se, brought the instant civil suit against a number of prison officials associated with Pennsylvania's Graterford State Correctional Institution. ECF No. 1. Wright claims that, while incarcerated at Graterford following his murder conviction, he was placed in a cell with another inmate who was known to suffer from mental illness and have violent tendencies. According to Wright, this other inmate attacked him, causing significant injuries.

Wright's pattern of distrusting his attorneys has continued to the present case. Wright was appointed a lawyer from the Prisoner Civil Rights Panel of the Eastern District of Pennsylvania; however, Chief Judge Petrese B. Tucker permitted Wright to discharge the first lawyer who volunteered to take his case after the lawyer did not file an opposition to a partial motion to dismiss. *See* ECF Nos. 19, 22, 31, 33. Wright's current lawyer, Jeremy Ibrahim, later volunteered to take Wright's case. ECF No. 49. Chief Judge Tucker scheduled a status conference which Wright was able to attend by a video link to his prison. Several days before the conference, Wright sent a letter to the court complaining that Attorney Ibrahim had not yet met with him and threatened to file a "Notice of Termination" if Attorney Ibrahim did not meet with Wright in a specific interview room at Graterford within ten days. ECF No. 53. A few weeks later, after this case was reassigned to the undersigned, ECF No. 56, Wright did in fact file a "Notice of Termination." ECF No. 57. Wright sought to discharge Attorney Ibrahim for failing to promptly visit him at Graterford and failing to protect him from "attacks" that he claims that Chief Judge

Tucker made against him during the videoconference. *Id.* Wright reiterated his complaints against Attorney Ibrahim in a letter dated May 10, 2016. ECF No. 63.

On June 27, 2017, Attorney Ibrahim filed a petition for the appointment of a guardian ad litem for Wright pursuant to Federal Rule of Civil Procedure 17(c). ECF No. 67. Attorney Ibrahim relates that he did in fact travel to Graterford to meet with Wright, but that Wright refused to meet with him unless it was in a specific area reserved for use when attorneys have documents to pass to their clients. As Attorney Ibrahim was unwilling to represent falsely that he had to pass documents to Wright to secure his preferred meeting place, Attorney Ibrahim left without meeting Wright. Attorney Ibrahim asserts that because Wright has been found to be incompetent, he is unable to act on his own behalf in this litigation and, as a result of his refusal to interact with Attorney Ibrahim, he remains unrepresented. Thus, he argues, Rule 17(c) requires this Court to appoint a guardian ad litem or issue another appropriate order to protect Wright's interests. The defendants support the petition for a guardian ad litem. ECF No. 67.

Wright, however, does not. He argues that because he had filed a "Notice of Termination" intending to terminate Attorney Ibrahim, Attorney Ibrahim does not represent him and cannot file a petition on his behalf. ECF No. 69. Wright states that the only attorney representative he will accept is an attorney from the Prisoner Civil Rights Panel, and on the condition that "such attorney must be compliant and cooperative with [Wright.]" *Id.* Wright also mentions that the only non-attorney guardian he would accept would be his mother. *Id.* In a letter subsequent to his opposition, Wright states that he received an envelope from Attorney Ibrahim, but that he immediately returned it, and will not have any future contact with Attorney Ibrahim. ECF No. 70.

In light of Wright's response, this Court contacted his mother to explore the possibility of her serving as a guardian for her son; however, she responded that she was unwilling to do so. ECF No. 76. This Court then contacted Monica I. Wiggins, Executive Director of Community Services for the ARC Alliance, a social service agency that provides guardianship services, about the possibility of her serving as Wright's guardian. Wiggins expressed her consent during a telephone conference with the parties, ECF No. 78, and again by letter to this Court, ECF No. 79.

## II. APPLICABLE STANDARD

Under Federal Rule of Civil Procedure 17, a court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). If a guardian ad litem is appointed, the guardian then has authority to act on the person's behalf in connection with the case, "with authority to engage counsel, file suit, and to prosecute, control and direct the litigation. As an officer of the court, the guardian ad litem has full responsibility to assist the court to 'secure a just, speedy and inexpensive determination' of the action." *Noe v. True*, 507 F.2d 9, 12 (6th Cir. 1974) (per curiam) (quoting *Fong Sik Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir. 1955) (Boldt, J., concurring)).

## III. ANALYSIS

**A. Appointing a guardian is appropriate in this case because Wright has been judged incompetent by the Pennsylvania courts.**

If—as here—"there has been a legal adjudication of incompetency . . . that is brought to the court's attention, [Rule 17] is brought into play." *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) (quoting *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986)). Competency is

determined by reference to state law, and "[u]nder Pennsylvania law . . . once a person is adjudicated incompetent, s/he is deemed incompetent 'for all purposes until, by court order, the status of incompetency is lifted.'" *Id.* at 308 (quoting *Syno v. Syno*, 594 A.2d 307, 310 (Pa. Super. Ct. 1991)).

The PCRA court conducted a thorough evaluation of Wright's competency only a few years ago, which included an evidentiary hearing and the testimony of two professionals who had evaluated Wright's records and conducted a comprehensive clinical examination. As a result, the PCRA court found that Wright lacked competency to dismiss his attorney—a finding that the Pennsylvania Supreme Court upheld. Because the status of incompetency has not been lifted by court order, Wright is incompetent under Pennsylvania law for the purpose of this suit as well. Thus, Rule 17(c) applies, and this Court must take steps to protect Wright's interests. *See Powell*, 680 F.3d at 308 (concluding that a district court abused its discretion by failing to appoint a representative for a pro se plaintiff who had previously been adjudged incompetent by another court, which had conducted a thorough review of the plaintiff's competency).

**B. Appointing a guardian ad litem will more adequately protect Wright's interests than appointing a replacement attorney given Wright's history of attorney-client conflict.**

Because this Court concludes that Wright is incompetent under Rule 17, the next step is to determine whether he already has a "duly appointed representative" who may act on his behalf. *See Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 135 (3d Cir. 2002). Wright has been represented by two attorneys to date in this suit, and argues that Rule 17(c) requires this Court to provide him with another who will comply with his wishes. In appropriate circumstances, "[i]t may be possible for the court to appoint counsel as a representative," but that "is not always prudent." *Gardner ex rel. Gardner v. Parson*, 874 F.2d 131, 141 n.14 (3d Cir.

1989). In light of the fact that Wright's incompetency stems from his irrational mistrust of his attorneys, this Court finds that appointing a new attorney to act as Wright's representative would not be prudent in this case. The Pennsylvania courts found that Wright's incompetency is characterized by a "delusional and distorted thinking involving imagined conspiracies" by professionals who try to help him, which created a pattern of "distrusting, discharging, and cutting off all communications" with attorneys. This pattern has continued in this case: Wright has once again cut off communication with his attorney, and presents various complaints of misconduct, alleging a "repeated and continuous pattern of both judicial and attorney misconduct that has been going on with impunity for the past 5 years." *See* ECF No. 69 at 2. An objective third-party is required to protect Wright's interests and ensure that his attorney adequately handles Wright's case. This Court therefore finds appointing a guardian ad litem to represent Wright's interests in conjunction with Attorney Ibrahim to be a more suitable course of action than simply appointing a new attorney.

### C. Monica I. Wiggins, NCG, of the ARC Alliance will adequately represent Wright's interests in this case.

Attorney Ibrahim states that the record of Wright's PCRA proceedings in the Pennsylvania courts lists two of Wright's family members as his "next friends;" however, despite Attorney Ibrahim's multiple attempts to reach them by letter and by phone to determine whether they would be willing to act as Wright's guardians, neither responded. *See* ECF No. 67 at 3. Furthermore, Wright's mother has communicated that she is not willing to serve as his guardian. If a party's duly-appointed representative "is unable or refuses to act" on the party's behalf, then the appointment of another person to serve as a guardian is in order. *Gardner*, 874 F.2d at 138. A

7
022718

district court has "substantial discretion" to decide who is best suited to act on the party's behalf. *Id.* at 139.

Wiggins has expressed her willingness to act as Wright's guardian for purposes of this action. Wiggins has four years of experience as a guardian, and over fourteen years of experience working with people with disabilities. ECF No. 79. She is both a member of the National Guardianship Association (NGA) and a Nationally Certified Guardian (NCG). *Id.* Additionally, as the Executive Director of Community Services for the ARC Alliance, she oversees two full-time guardians providing services to over eighty people, and is currently representing another inmate following a civil lawsuit against prison officials to ensure that he receives the medical treatment he requires. *Id.* This Court concludes that Wiggins is well-qualified to represent Wright's interests in this lawsuit, and appoints her as Wright's guardian ad litem.

As a final point, this Court emphasizes that although Wiggins, as Wright's guardian ad litem, has the ability to control and direct this lawsuit on his behalf, Wiggins's appointment does not mean that Wright loses all say in how his case is litigated. The Pennsylvania Rules of Professional Conduct advise that a lawyer representing a party with diminished capacity should, "as far as reasonably possible, maintain a normal client-lawyer relationship with the client." Pa. R. Prof'l Conduct 1.14(a). While "the lawyer should ordinarily look to the representative for decisions on behalf of the client," "the lawyer should as far as possible accord the represented person the status of client, particularly in maintaining communication." *Id.* cmts. 2, 4. The parties are encouraged to keep these principles in mind.

## IV.  O R D E R

**AND NOW,** for the aforementioned reasons, **IT IS ORDERED THAT**:

1. The Petition to Appoint a Guardian ad Litem, ECF No. 67, is **GRANTED**.

2. Monica I. Wiggins, NCG, is **APPOINTED** as Wright's guardian ad litem for purposes of this action.

3. The parties shall confer through their legal counsel and report to this Court their proposals for further proceedings **within fourteen days** of the date of this Order.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge